UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

Fin Brand Positioning, LLC,
Martin Eldon Lapham, and
Julie Lapham

   v.                                                Civil No. 09-cv-405-JL
                                                         Opinion No. 2010 DNH 189

Take 2 Dough Productions, Inc.,
David Tully, and Dawn Tully

**MEMORANDUM ORDER**

This case arises from a dispute between two married couples over a business plan to produce, market, and sell pizza dough. Plaintiffs Martin and Julie Lapham, together with Martin's marketing company, Fin Brand Positioning, LLC, brought suit against defendants David and Dawn Tully and their company, Take 2 Dough Productions, Inc., alleging that the Tullys reneged on the business plan and misappropriated intellectual property that the Laphams had developed, including a new logo, a special box for the dough, and other marketing materials, without providing any compensation.  This court has jurisdiction under 28 U.S.C. § 1332(a)(1) (diversity), because the plaintiffs are New Hampshire citizens, the defendants are Maine citizens, and the amount in controversy exceeds $75,000.

The defendants have moved to dismiss most of the claims against them, see Fed. R. Civ. P. 12(b)(6), arguing that those claims cannot be litigated until the United States Patent and Trademark Office ("USPTO") has decided whether to approve Martin

Lapham's pending application to patent the special dough box. After hearing oral argument, this court grants the motion in part and denies it in part. The plaintiffs cannot litigate their claim for a declaration of sole inventorship and ownership of the dough box while Martin's patent application is pending with the USPTO. But they may litigate their other claims: misappropriation of intellectual property and services, unjust enrichment, and unfair and deceptive trade practices (as well as their contract claim, which the defendants did not move to dismiss).

## I. **Applicable legal standard**

To survive a motion to dismiss under Rule 12(b)(6), the plaintiff's complaint must make factual allegations sufficient to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). In ruling on such a motion, the court must accept as true all well-pleaded facts set forth in the complaint and must draw all reasonable inferences in the plaintiff's favor. See, e.g., Martino v. Forward Air, Inc., 609 F.3d 1, 2 (1st Cir. 2010). The following background summary is consistent with that approach. With the facts so construed, "questions of law [are] ripe for resolution

at the pleadings stage." Simmons v. Galvin, 575 F.3d 24, 30 (1st Cir. 2009).

## II. Background

In April 2009, the Tullys and Laphams developed a business plan to start a new company that would produce, market, and sell pizza and bread dough under the brand name PaneBelle. The Tullys already owned a successful dough company called Take 2 Dough Productions, which was to be responsible for producing the PaneBelle dough. The Laphams, in turn, were to be responsible for marketing and selling the product. The business plan called for the Laphams, who are both marketing professionals, to expand what had been primarily a wholesale dough business into retail operations.

In furtherance of that business plan, Martin Lapham (through his company Fin Brand) designed a logo for PaneBelle dough, along with various other branding and marketing materials, which he provided to the Tullys. The Tullys proceeded to file an application with the USPTO for trademark registration of the PaneBelle logo, which is still pending. See U.S. Trademark Application Serial No. 77/706964 (filed Apr. 4, 2009). Martin also designed a special box in which PaneBelle dough could be sold. The box had certain interlocking and telescoping features

that allowed it to expand with the rising (or "proofing") dough once removed from the consumer's refrigerator, and to indicate when the proofing was complete.

In June 2009, the Laphams and Tullys agreed to form PaneBelle as a limited liability company or other legal entity. Under their agreement, each of the four individuals was to take an equal ownership share in the company, and its profits were to be shared equally among them (after an initial period where any profits would be reinvested in the company). They also agreed that the entity would own the PaneBelle intellectual property, including its "name, logo, packaging . . . and all printed marketing material." Through early marketing efforts, Julie Lapham managed to secure at least one major contract for the retail distribution of PaneBelle dough.

Instead of forming PaneBelle as a legal entity, however, the Tullys reneged on the agreement in August 2009. They took the intellectual property that Martin Lapham had developed (including the logo, the special box, and other marketing materials) and began marketing and selling PaneBelle dough through their own company, Take 2 Dough. They continue to market and sell the product on their own to this day. The Laphams have never received any compensation, royalties, or other payments for the

intellectual property they created or the marketing services they performed for PaneBelle.

The Laphams and their company filed separate suits against the Tullys and their company in New Hampshire state court in October 2009, asserting a wide array of state-law claims. The defendants removed the cases to this court, see 28 U.S.C. § 1441(a), where they were consolidated into a single proceeding. In their answer, the defendants asserted a similar array of state-law counterclaims against the plaintiffs. They later moved for a preliminary injunction barring the plaintiffs from using confidential and proprietary information relating to PaneBelle. This court denied the motion as moot after the parties indicated that they could resolve the issue by stipulation.

In February 2010, with the case still in its early stages, Martin Lapham filed an application with the USPTO seeking a patent for PaneBelle's expandable box. See U.S. Patent Application No. 12/704,954 (filed Feb. 12, 2010). He listed himself as the box's sole inventor on the application. The USPTO has not yet decided whether to issue a patent. To date, no one has filed a competing patent application with the USPTO-- otherwise known as an "interference," see 35 U.S.C. § 135-- challenging Martin's claim of sole inventorship. But the application has not yet been published by the USPTO for public

review.  See 35 U.S.C. § 122(b) (requiring publication 18 months after a patent application is filed, unless the applicant requests earlier publication).

After filing the patent application, the plaintiffs amended their complaint in a number of significant respects.  As amended, the complaint asserts claims for (1) a declaration that Martin Lapham is the sole inventor and owner of the expandable box and any related patents; (2) misappropriation of intellectual property and services, unjust enrichment, and unfair and deceptive trade practices; and (3) breach of contract.  Before filing an amended answer, the defendants moved to dismiss the plaintiff's first and second claims, see Fed. R. Civ. P. 12(b)(6), arguing that they cannot be litigated while Martin's patent application is still pending before the USPTO.  This court will address each claim in turn.

III. **Analysis**

A. *Declaration of sole inventorship and ownership of the expandable box (count 1)*

The first claim that the defendants have moved to dismiss is the plaintiffs' request for a declaration that Martin Lapham is the sole inventor and owner of the expandable box and any related patents.  It is well established that "inventorship is a unique question of [federal] patent law."  HIF Bio, Inc. v. Yung Shin

Pharms. Indus. Co., 600 F.3d 1347, 1353 (Fed. Cir. 2010). Congress, as reflected in 28 U.S.C. §§ 116 and 135(a), has given the USPTO exclusive authority for making initial determinations of inventorship in response to patent applications. HIF Bio, 600 F.3d at 1353. Thus, while a patent application is pending, parties may not litigate inventorship claims in court; such claims may be brought only after the USPTO has rendered its final decision on the patent application. Id.; see also E.I. Du Pont de Nemours & Co. v. Okuley, 344 F.3d 578, 583-84 (6th Cir. 2003); Sagoma Plastics, Inc. v. Gelardi, 366 F. Supp. 2d 185, 188 (D. Me. 2005).

The plaintiffs accept those general principles, but argue that this court should carve out an exception for cases where inventorship is uncontested before the USPTO. In such cases, they argue, the patent applicant should be allowed to litigate inventorship claims without having to wait for the USPTO's decision. But the plaintiffs have not identified, nor has this court been able to find, any authority for that proposition. According to the leading cases on this issue, "Congress intended to draw a distinction between patent applications and issued patents"--not between contested and uncontested applications--so as to "avoid[] premature litigation and litigation that could become futile if the [USPTO] declined to grant a patent."

Okuley, 344 F.3d at 584. Those risks of premature and futile litigation exist even in cases where inventorship has not (yet) been contested.

Indeed, this case is a perfect example of that point. The defendants have made clear (in their answer, motions briefing, and again at oral argument) that they believe David Tully is the sole inventor of the expandable box or, at the very least, its co-inventor with Martin Lapham, and that Martin has an affirmative duty to correct his patent application in that regard. See 37 C.F.R. §§ 1.56 (patent applicant "has a duty of candor and good faith in dealing with the [USPTO]") and 1.63(a)(2) (applicant must "[i]dentify each inventor" on the application). If Martin refuses to do so, the defendants have reserved their right to initiate an interference proceeding before the USPTO, which they still have plenty of time to do. So there is a significant risk that litigation of the inventorship claim in this case would be premature.

Moreover, one of the reasons the defendants have not (yet) challenged Martin's patent application is that their patent counsel believes the expandable box concept may be an "obvious" invention, which would make it unpatentable under 35 U.S.C. § 103. See, e.g., KSR Int'l Co. v. Teleflex, Inc., 550 U.S. 398 (2007). While this court expresses no opinion on that issue,

which must be "determined, in the first instance, by examination of the patent application in the [US]PTO," In re Dillon, 919 F.2d 688, 701 (Fed. Cir. 1990), the defendants' doubts about the patentability of their own alleged invention suggests that there is at least some risk that litigation of the plaintiffs' inventorship claim "could become futile if the [USPTO] declined to grant a patent" for the expandable box on obviousness grounds. Okuley, 344 F.3d at 584.

     Given those risks and the lack of authority for the plaintiffs' position, this court declines to carve out an exception here to the established rule that inventorship claims may not be litigated while a patent application is pending before the USPTO.  To the extent that the plaintiffs' first claim requests a declaration that Martin Lapham is the sole inventor of the expandable box, it is dismissed without prejudice to being reinstated once the USPTO reaches a final decision on Martin's patent application (if this case is still open at that time, and reinstatement is otherwise permissible under the Federal Rules of Civil Procedure) or brought in a separate lawsuit following the USPTO's decision.  See, e.g., HIF Bio, 600 F.3d at 1353 (dismissing a similar claim for a declaration of sole inventorship due to a pending patent application); Sagoma Plastics, 366 F. Supp. 2d at 188 (same).

Even if they cannot seek a declaration of sole *inventorship*, the plaintiffs argue, they should still be permitted to seek a declaration that Martin Lapham is the sole *owner* of the expandable box concept. It is true "that inventorship and ownership are separate issues." Beech Aircraft Corp. v. EDO Corp., 990 F.2d 1237, 1248 (Fed. Cir. 1993). Inventorship is the "question of who actually invented the subject matter claimed in a patent," whereas ownership is the "question of who owns legal title to the subject matter." Id. The two questions are closely related, however, "because the patent right initially vests in the inventor, who may then . . . transfer that right to another," just as one could transfer other forms of personal property. Id.; see also 35 U.S.C. § 261 ("patents shall have the attributes of personal property").

In this case, the plaintiffs have advanced two distinct theories of ownership. One is based on Martin Lapham's alleged inventorship of the expandable box, which cannot be litigated now (for reasons just discussed). But the other theory is based on an alleged contract in which the Tullys and Laphams agreed that their new company, PaneBelle, would own the rights to the box concept and that they would each take an equal ownership share in the company. Since that contract "could dictate which party owns the invention," regardless of which party invented it, the

plaintiffs argue that "the ownership dispute could be resolved without a determination of who invented" the expandable box and therefore is not barred by Martin's pending patent application. HIF Bio, 600 F.3d at 1356-57 (allowing ownership claim to go forward on that basis).

That argument fails here for two reasons. First, the contractual theory of ownership is incompatible with the relief that the plaintiffs are expressly requesting on this claim: a declaration that Martin is the sole owner of the expandable box concept and any related patents. At most, the parties' agreement would make Martin an equal co-owner of that intellectual property with his wife and each of the Tullys, through their new company PaneBelle. Thus, the plaintiffs' request for a declaration of sole--as opposed to joint--ownership is really based on the inventorship theory, not the contractual theory.

Second, the contractual theory of ownership presumes that the expandable box concept is something that can be owned, i.e., that it is a patentable invention. As just discussed in connection with the plaintiffs' inventorship claim, the defendants have raised doubts about the obviousness, and hence the patentability, of the expandable box. See 35 U.S.C. § 103; KSR Int'l, 550 U.S. at 398. Like inventorship, that issue must be "determined, in the first instance, by examination of the

patent application in the [US]PTO," not by litigation.  Dillon, 919 F.2d at 701.

For both of those reasons, this court concludes that the plaintiffs' request for a declaration that Martin Lapham is the sole owner of the expandable box concept also must be dismissed without prejudice, in light of Martin's pending patent application.  Id. at 1354 (pending patent application bars ownership claim "if the inventorship issue is essential to the resolution of the claim").

### B. *Misappropriation, unjust enrichment, and unfair and deceptive trade practices (count 2)*

The other claim that the defendants have moved to dismiss is the plaintiffs' multifaceted claim for misappropriation of intellectual property and services, unjust enrichment, and unfair and deceptive trade practices.  The defendants argue that this claim, too, should be barred by Martin Lapham's pending patent application, because it depends on the inventorship and patentability of the expandable box.  This court agrees that, insofar as it relates to the box concept, the plaintiffs' claim cannot succeed unless they prove either that Martin invented the box, or that they otherwise acquired ownership of the box concept, such that the defendants could be said to have misappropriated their property.  To that extent, then, the claim

cannot be litigated while Martin's patent application is pending. See Part III.A, supra.

The plaintiffs' claim, however, goes well beyond the expandable box. The claim also alleges that the defendants misappropriated services that the plaintiffs performed for PaneBelle.[1] And it alleges that the defendants misappropriated other intellectual property that is not covered by patent law, including a new logo and various marketing materials that the plaintiffs allegedly developed for PaneBelle. So far as this court can tell, neither the pending patent application in particular, nor patent law in general, has any bearing on those allegations. The defendants (who seem to have focused only on the allegations relating to the expandable box) have not argued otherwise.

It is well established that where, as here, a claim for misappropriation, unjust enrichment, or unfair and deceptive

---

[1] At oral argument, the defendants noted that the plaintiffs' claim mentions "services" only in its heading, not in any of its specific allegations. But one of the allegations refers to "the making . . . of" intellectual property (¶ 38), which is another way of saying "services." And the claim incorporates by reference the complaint's earlier allegations of "defendants' wrongful conduct," which include that the defendants "stole . . . the services provided" and failed to provide "reasonable compensation" for those services (¶ 29). This court accordingly construes the claim to encompass services, as its heading suggests. See, e.g., Aversa v. United States, 99 F.3d 1200, 1210 (1st Cir. 1996) ("the district court must construe the complaint liberally" in evaluating a motion to dismiss).

business practices is supported by both a patent theory and an "alternative, non-patent theory," it may proceed on the non-patent theory, notwithstanding that a pending patent application bars litigation of the patent theory. HIF Bio, 600 F.3d at 1356-57 (allowing litigation of such claims, despite a pending patent application, where the plaintiffs alleged misappropriation not only of their invention, but also of their experiments, experimental data, and draft papers). This court accordingly concludes that, insofar as the plaintiffs' claim relates to services or non-patent intellectual property, it may be litigated now, without waiting for the USPTO's decision.

## IV. Conclusion

For the reasons set forth above, the defendants' motion to dismiss[2] is GRANTED without prejudice as to count 1, but DENIED as to count 2.

**SO ORDERED.**

_____
Joseph N. Laplante
United States District Judge

Dated:    October 29, 2010

---

[2]Document no. 21.

```
cc:   Philip L. Pettis, Esq.
      K. Joshua Scott, Esq.
      Scott A. Daniels, Esq.
      James F. Laboe, Esq.
```